Secretary, Louisiana Department of Health and Hospitals. The issues before the Court have been addressed in brief fairly extensively by a number of parties. I'll try to focus on a few for the purpose of a little argument. I, of course, will take any questions the Court has on any of the issues in the brief. To summarize, the claim that's before the Court concerns an injunction that was entered that effectively sets aside, if you will, a termination of a Medicaid provider agreement on behalf of Planned Parenthood. The basis of that ruling is grounded in what's referred to as the choice of provider statute that I'll be discussing at length in a moment. We think the decision below was improper because both Planned Parenthood and the individual providers lack standing. We believe it is likely unripe. I think it was clearly unripe three days before the ruling, and then there was an announcement of essentially a forfeiture of the administrative process in a telephone conference with the Court on a Friday, and I think that may have actually had some implications to eliminate the ripeness, but I think it has grave implications on standing, and I'll get to that in a moment. And then last is the choice of provider statute. We do not believe the choice of provider statute grants the broad right that is at issue in this case. I think the decision by the District Court below is the most expansive interpretation of that statute in the country, because what it says is that the individual recipient has a right to challenge a disqualification proceeding concerning a particular individual provider. No other circuit court, no circuit court has ever— So are they challenging the disqualification, or are they saying they're not being allowed to choose the provider that they wish to use? I think it's probably the latter. Is there a difference? There is a difference, Your Honor. You could argue it's both, but here they're arguing that they want to pick the provider, and that by removing this particular provider, we have denied them access to a provider whom they believe is adequately qualified, and they should be allowed to have that provider provide the services. And so this case presents a clash between the authority of the state to administer the program and the authority of individual recipients to assert their right under the choice of provider statute. That is really the loggerheads of this case. This is not going to be an order to close the clinic. It's just going to deny the poor and those who would qualify for Medicaid to use it. Now, it wouldn't be an order that prohibits them—the Secretary issued an order terminating the provider agreements for Planned Parenthood. The provider agreements under Medicaid? That's correct, Your Honor. I apologize. Yes, that is correct. So people that are not depending on Medicaid are not affected, and this is a clinic that doesn't do any abortions or fetal tissue or anything like that. That's correct, Your Honor. It's just taking the poor who would qualify for Medicaid or the elderly or whatever and saying you can't go there, everybody else can. Yes, Your Honor. And they're doing it because—the reason they're doing it is what's at the heart of this case. The reason they denied it is because following an investigation, they'd made certain findings, they being the department, that Planned Parenthood had engaged in conduct that they believed disqualifies them. So there's a disqualification process underway on the Louisiana side, administratively. Your Honor, we believe that the—originally, I know the courts read the briefs, but there was originally an at-will termination. There was originally an at-will. That raises a number of more complex legal issues. It does. The state voluntarily rescinded that. They then issued the four calls. When they issued the four calls, they notified Planned Parenthood that it was suspended, which means it would not take effect under Louisiana law, it was not final, and they would have 30 days to request an administrative hearing, and during that time, they could have informal meetings, they could conduct discovery, and if they requested the administrative review, that administrative review would give them complete due process protections and discovery as well, and it would run its course administratively, and ironically come back at the end of the day if the secretary exercised her authority to essentially reconsider her decision. So there was an administrative process that was there. That administrative process fully protects the injury that they claim is threatened in this case. It may create some administrative burden, have to go through it, but no one will be . . . their provider agreement will not be pulled down. So the harm they were . . . And why . . . all right, so you're saying, why are we here then? If money's going to still flow to Medicaid until the administrative process is over, why do we need an injunction? Because I agree with that, Judge, and we filed a challenge on rightful spaces, and on the Friday before the judge issued the ruling, let me kind of set the chronological sequence. On Monday, the 30th of October, I believe, was the day that under Louisiana law, they would have to file their administrative request. And the contract . . . They mean the Planned Parenthood. Yes, sir. That's correct. Monday, the 30th. We had a telephone conference with the court, because Judge de Gravel was out of town, so we did the hearing by phone on Friday. And for the very first time at that hearing, to avoid our rightness challenge, Planned Parenthood's counsel announces, we're going to forego any administrative appeal. And Judge de Gravel said, well, Mr. Faircloth, if they're going to forego the appeal, it seems to me we have a very ripe matter before the court. Would you not agree? Or am I missing anything? And I actually said, no, I don't think you are, Your Honor. And then the judge used that comment as though it's an admission of that I think this is now ripe. The reason I said that is because that comment has great consequences. It broke the chain of causation injury on standing. And that's important, because what they're asserting here is the patients. They're asserting third-party standing for the patients. So their argument is that we have a right to come in and assert third-party standing for these patients. And on Friday before a hearing, I mean, a date where they could protect those rights, they forfeited their administrative process, which puts them in direct conflict. But isn't it a patient's right to choose, and the patient doesn't have the right to make an administrative appeal? So the patient's left out in the cold by not having the health care provider of their choice, and they don't have the ability to appeal administratively the ruling by the state. That is correct if you interpret the choice of provider statute to give them a right to challenge a disqualification proceeding, and I don't think it does. In this instance, you had Planned Parenthood forfeiting their administrative review. But Planned Parenthood agrees that they can, that the state, that they are, the state can for cause terminate their provider agreement. They don't disagree with that. I think that's correct. They have not taken the position in this litigation that the state lacks authority. In fact, they've said, we recognize the state has a substantial authority, competence, ethics, integrity of the program. Their argument is, tied to the district court's argument, that the word qualified in the choice of provider statute means clinical competence narrowed. Well, I mean, where's the, I'm not sure I understand, where's the administrative proceeding? Is there going to be an administrative judgment now that Planned Parenthood is no longer a provider? There, there won't be unless you remand the case, because I think there's a day left on the clock. And that's why I said that it may be unripe. If, if, if, if, if you find that their announcement on Friday constituted a judicial admission which binds them, I think the case is ripe, and I think that now, now we turn to the standing issue, and I think they've destroyed their own traceability or causation analysis understanding. I don't think they have third-party standing. And I don't think the individual plaintiffs have standing, or at least statutory standing, because they don't have a right of action. Let me make sure I, like, let's say this is an individual physician, and he had been brought up, the state said, you know, you've been accused of medical malpractice, and we're terminating you as a Medicaid provider. And I wanted to come in court and say, wait a minute, I don't care if he's been negligent. I'll insist that you keep him as a Medicaid provider. Is, are we, is that apples to apples? Pretty close. Maybe different kinds of apples, but I think that, that is pretty close. I, I made the comment in our brief in arguing that they couldn't assert the claim of Planned Parenthood, saying this is equivalent to someone seeking an injunction against the State Bar Disciplinary Council to prevent a disbarment proceeding on the basis that their clients will not be allowed to hire them as an attorney. It's a little bit similar to that. There's a direct conflict between the interest of Planned Parenthood and the interest of those for whom they seem to, they, they seek to assert this right. The state of Louisiana is acting on behalf of those patients. The state of Louisiana has tremendous authority and a responsibility to protect those patients from providers who they believe are not either competent or in compliance with the program or fiscally irresponsible. So the state is acting on behalf of Planned Parenthood's patients. And Planned Parenthood simultaneously through this proceeding is taking the position you can't kick me out of the program because my patients will be denied our care. So it's, it's a very peculiar claim. I'd like to spend just a moment or two, if I may, on the Choice of Provider statute. There are a couple of circuit court opinions, Ninth Circuit and Sixth Circuit, that dealt with the Choice of Provider statute. The plaintiffs have relied on those heavily, heavily. Those cases did not involve individual disqualification proceedings. And that is key. And this is from the Ninth Circuit case. The court said, no one questions Arizona's authority to exclude individual providers from its Medicaid program on the basis of criminal or fraudulent activity. Rather, the statute in that case sought to bar a class of providers from Medicaid. There was a similar case, Indiana, it was a Seventh Circuit case, that made the very same observation, qualified their holding to point out both of those cases dealt with abortion rights cases and there were prohibitions on providers receiving funding for abortions. And so there were, there were exclusions in those cases that applied to an entire class of services. And the court said, no, you can't do that. That offends the only willing provider or Choice of Provider. Both of those courts were careful to say, this does not mean that the state doesn't have authority in an individual disqualification proceeding. Therein is the difference. And if I will, I'll move quickly now to why it matters. I cited a case, O'Bannon, from the United States Supreme Court that dealt with an interpretation of this very same statute. O'Bannon v. Town Court Nursing Center. The very same statute was at issue. A nursing home was disqualified. The nursing home filed suit seeking a hearing, due process claim, and their patients joined, a number of patients. The district court granted the injunction, the Court of Appeals affirmed it, it went to the Supreme Court, and in a 7-1 decision, the court specifically said that that statute, the one that's issued in this case, quote, does not confer a right on a recipient to continue to receive benefits for care from a provider that has been decertified. The court specifically drew the distinction between the patient's right to obtain care from a range of qualified providers versus the patient's right to decide who is qualified. I think O'Bannon provides the footing here for this decision. I think it drives the outcome. The courts that have ... How do we determine qualification or disqualified? I mean, is that totally up to the state of Louisiana to interpret that term? I don't think it's that broad. The plaintiffs would argue that Louisiana's trying to just make up what qualifications may mean. I think there are certainly guideposts within the Medicaid Act. It talks about fraud, program compliance, criminal activity. There are some very broad grants of authority and some legislative history that stands for the proposition that the states have the right to exclude anyone as long as it's consistent with state law. In this case, the quality of care is not the disqualification. Is that right? The quality of care is satisfactory? The clinical competence piece we did not challenge. That's the difference. The trial judge narrowly focused on that. The trial judge says qualifications means clinical competence in the choice provider statute. I would argue that qualifications in that statute has to mean the same thing that qualification means under Louisiana's authority to select providers. It has to. If not, it is the tail wagging the dog. Otherwise, Louisiana's authority would say you can exclude for all these reasons, however, the patient. The patient has a superior right to demand a provider who can provide the competence. So the patient's right to any willing provider has to be interpreted harmoniously with the grant of authority to Louisiana and its responsibility to administer the program. The United States made an appearance in an amicus and they list all the regs in the statute that speak to the state's authority. I agree with everything they say. They admit that ethical conduct matters, fiscal integrity matters. I agree. Fraudulent conduct is a basis. We do not dispute the scope of what the courts have said that statute provides or what the United States says it provides. The narrow answer in this case is can a patient and Planned Parenthood on their behalf prematurely, we believe, insert a federal court into this process of determining whether or not there will be a specific disqualification. The state of Louisiana, one of the grounds was fraud and misrepresentations. Let's go with that because that's the clearest one. Facially, that is within the framework of the statute. If they believe that there's insufficient evidence to support that allegation, there's a process in place that's approved by the Act and it's approved by Congress that allows them to challenge factually those allegations. So did the state of Louisiana do an independent investigation and find fraud on the part of Planned Parenthood? Not fraud per se, Your Honor. They found that there were a couple of KETAM cases that were settled. One was pending and another was settled and cited the provision of Louisiana law that says the settlement of a false claims act justifies or is a basis, may be a basis for termination. Does the settlement of these cases result in a fraud? I don't think it results in a fraud. I think it would result in a violation. It may result in a violation under the statute that would support . . . They were settled without any concession there had been. That's correct, but most KETAM cases, when there's a settlement, there are. I'm not aware of a single instance of anyone settling a KETAM case without a similar reservation. It's either tried or it's settled. It's settled all the time because of the cost involved and all of that. But they typically say this is not a concession on the part of anyone. Yeah, and you can't make it otherwise. That's correct, Your Honor. I'll see if I have time to see it. Mr. Burklaw. Ms. Flaxman. May it please support, Carrie Flaxman for the patient plaintiffs Jane Doe 1, 2, and 3 and Planned Parenthood. The district court properly entered the preliminary injunction and denied the motion to dismiss against defendant's termination of Planned Parenthood from the Medicaid program. I'm going to start here with the patient's right. What if we conclude that patients have no standing? Where are we? There are two sets of claims here, Your Honor. The patient claim that they have a right under the Federal Medicaid Act to choice of their qualified provider and that that has been violated here by defendant's termination of Planned Parenthood's provider agreements. In addition to that, there are constitutional claims that the district court judge did not reach in entering the preliminary injunction. But there are constitutional claims that defendant has violated Planned Parenthood's equal protection  and if this court found that the patient plaintiff lacks standing, those claims would remain. Planned Parenthood is not here seeking injunction against an administrative process. The administrative process, Planned Parenthood, when terminated, this was a termination of the provider agreements. At that point, Planned Parenthood had the option of invoking the administrative process, but Section 1983 and as well as Medicaid Act are quite clear that there is no obligation to exhaust that administrative remedy. And as counsel here admitted, the Jane Doe, the patient plaintiffs had no administrative process to invoke. All right. So the, my question is, so Planned Parenthood has decided not to challenge this administratively? Planned Parenthood, Your Honor, the state has said that there are three days left on the clock. I'm asking you. You represent Planned Parenthood. Is Planned Parenthood going to continue to challenge what the state has done administratively? Planned Parenthood's plan is to proceed in federal court. As I said, when there was termination of the agreement, Planned Parenthood had no obligation to exhaust the administrative process. And then we say that, what will Planned Parenthood's claims be? They'll be only constitutional claims? Is that what you're saying? If, if, if, Your Honor, if the claim, the Jane Doe claims, if the court found that. I'm asking about Planned Parenthood's claims, not Jane Doe. If we, if we say the plaintiff's, individual's patients have no standing, what claims does Planned Parenthood have left? Planned Parenthood has the constitutional claims that is asserted. Not statutory claims? Uh, no. Okay. I want to be sure where we are. They have not brought statutory claims. The Jane Doe patient plaintiffs have brought the state, the, the patient claims, the statutory claim here. Would the patients have any cause of action, I guess, against Planned Parenthood for not seeking administrative appeal? Is there any issue there or possible conflict because the patients say, Planned Parenthood, we appeal this. We think you should have these benefits and we're going to lose out on this. Is there an issue there? As I said, possible complaint or remedy of some sort between the Jane Doe's and Planned Parenthood? As I said to Judge Owen, Your Honor, the Planned Parenthood had no obligation to exhaust that administrative process in bringing its claims. It has section 1983 claims that its constitutional rights were violated. And to be clear, let's go back and look at what happened in this case. As Mr. Faircloth stated, the first thing that happened was that the agency terminated Planned Parenthood's provider agreement with no reason at all for that termination. They just said, we can terminate you. There was questioning from the district court about that. No other provider had ever been terminated from the Medicaid program in Louisiana under those circumstances. You could have taken the position, Planned Parenthood could have taken the position that we didn't do anything that falls with any, we're qualified, dah, dah, dah, dah. You can't terminate. You don't have the statutory authority to terminate us. It could take that position. Planned Parenthood, well, at the time, when Planned Parenthood filed this lawsuit, along with the patient plaintiffs asserting the same right they're asserting here, there was no administrative process that would have suspended anything, and there were no reasons given for the termination. It was just, we can terminate you. No reasons given at all. The patient plaintiffs and Planned Parenthood filed suit in federal court, and after questioning by the district court, the state revoked that first termination and came back with three reasons for the termination, all of which both the patient plaintiffs and Planned Parenthood have asserted do not merit. Okay, so you are making a statutory, Planned Parenthood is making a statutory argument in the district court or not? You would keep coming back to this? Your Honor, the statutory claim is the patient's claim that they have been deprived of their right to a qualified provider. Doesn't Planned Parenthood have the statutory right to say you can't terminate me as a provider? Under the free choice of provider claim, it is the individual patient's right. And they are here claiming that they have been deprived. Doesn't Planned Parenthood have some statutory recourse if they're terminated as a Medicaid provider? There are two options because they were terminated as a Medicaid provider. They had the administrative remedy that was provided as per Louisiana's obligations under the state Medicaid plan. But as Planned Parenthood has Section 1983 constitutional claims Right. Okay, I just want to be clear. What about, I ask this analogy, is it analogous or not? Let's assume that there's a physician who is challenged by the state's Medicaid provider. The state says you have committed medical malpractice on numerous occasions. We are terminating your Medicaid provider status. Would I as a patient have the right to challenge the state and say no, I don't care if he's medically negligent. You have to keep letting me see him and keep providing Medicaid to him even though you as a state have determined that he's negligent, an unfit provider. I disagree with Mr. Faircloth as apples to oranges. It's not, it's not, certainly not apples to apples. Patients like the patient plaintiffs here have a right to a choice of a qualified provider. What if the state says you're not qualified because you have committed malpractice? In that case, that would be a valid basis for terminating Medicaid provider agreement and those patients could never prevail in bringing that claim. The patients would get to litigate whether he was negligent or not? The patient. And the doctor didn't challenge it. The doctor just said, I'm folding up my ten, I'm going to let the patients challenge it. Well, to be clear, the statute gives patients the right to choose from qualified providers who are willing to provide that care. In that case, if the doctor was just going to say, I don't care, I'll do whatever the state, you and the patients fight it out, I'll do whatever you say. Well, I would deem in that case that that provider wasn't willing to continue to provide. Planned Parenthood is here as well. Well, he says, I'll, I'll take anybody's money, but I'm not going, I'm not going to spend my attorney's fees to go into court and litigate with the state over whether I was medically negligent or not. For my own reasons. If the state wants to give these people, let me be a Medicaid provider, fine. If not, fine. But I'm going to let my patients litigate whether I'm negligent. Is that the way? Well, I would submit again in that case, Your Honor, that if that part, if that physician isn't participating, that that would render him an unwilling provider, but, but he also is not, he could not be considered qualified under the Federal Medicaid Act because he has been validly deemed. Well, that's my question. Who, who makes the validly deemed determination? Well, as an initial, as an initial step, the agency is obviously the one that decides who they're going to terminate. Okay. And let's say, and let's, let's, why is it that the state's made, they say a valid determination and now you're saying a patient can come behind that and say, no, it's not valid? If, and the, the brief of the United States lays this out quite well, as does the guidance CMS has recently issued and I provided to the court via 28J letter that sets forth clearly what are permissible bases for terminating a provider from the Medicaid program. And, and in, in this case, which the brief of the United States agrees, what defendant has done can, cannot survive scrutiny at all. It's neither, none of the bases asserted are bases for terminating properly from a Medicaid program and none of them have been supported by the kind of evidence that the Federal Government has made clear is necessary in these cases. Let me talk about the standing question here. I'm sorry, Your Honor? I'm talking about standing, certainly Planned Parenthood can make all of those arguments for itself. And if it's unwilling to, why is it any different from a physician who says, I'm unwilling to pay to fight it. I'm going to let my patients pay to fight it. Your Honor, standing, standing here is, is quite clear. The, the patients have been threatened with the termination of their chosen provider. I think the question that, that we're talking about now is the scope of the, the right to receive care from a qualified provider of your choice, which is like a statutory standing question. The decision of the Seventh Circuit, a decision authored by Judge Sykes and a decision by the Ninth Circuit have made clear that patients who are deprived of their qualified provider of their choosing are entitled to bring a claim in federal court to continue to receive care from that provider. And those courts have made very clear that the determination of whether or not a provider is qualified is something that the federal courts can determine. And both courts looked at that in terms of the three-part test that the Supreme Court has laid out in the Blessing and Gonzaga cases. The first question is whether a right is unambiguously conferred, rights creating language, which there certainly is in AA23 of the Medicaid Act. Second is whether the provision at issue can be interpreted, whether it can be interpreted by the court. Both the Seventh and the Ninth Circuits held that it could. And the third is whether the language is mandatory on the state. And both courts again held that it, that it was. And in that case, the patients have a right to come to federal court to vindicate their choice of provider. Now, the Fifth Circuit has never considered this question with respect to AA23 of the Medicaid Act. But this court has held that other provisions of the Medicaid Act give patients the right to come to federal court to vindicate their rights under the Federal Medicaid Act. There's a Dixon case and the Romano case, both of which actually defendant, the defendant here was the defendant. Let me ask something to put this in perspective. We're here on an interlocutory appeal, right? That's correct. For a temporary injunction, all right? If we would affirm that, and it, where is the district court at that point? Your Honor, the district court proceedings have been stayed pending this appeal. Yeah, I understand that. But if the appeal affirms the temporary injunction, so it's back in the district court, does that injunction become permanent and there's another appeal or what goes, are there any other evidence to be adduced or what? Your Honor, this was just a, as you said, just a preliminary motion for temporary restraining order and preliminary injunction. Defendant responded with a motion to dismiss. That's all that has taken place. There's been no discovery. If this court were to affirm, it would go back to the district court and the case, I presume, would proceed to final judgment with discovery. On the merits? On the merits. Okay. And I want to go, I want to go back to a few things that Mr. Faircloth said. And this is, again, he conceded that the patient plaintiffs had nothing to exhaust and that they have their right under Section 1983. And the question in his mind was how broad is that right under Section 1983? He acknowledged that they have, that defendant in this case has not challenged the clinical competence of Planned Parenthood, that this is about other asserted bases. He listed here fraud and misrepresentation. Now, as the court discussed with Mr. Faircloth, there were two False Claims Act cases at issue. Both have settled. Both have settled without any kind of admission of wrongdoing by Planned Parenthood. And that, those settlements do not even constitute a violation even under Louisiana state law, which makes clear that a False Claims Act case, that a settlement in a False Claims Act case is not a violation of Louisiana Medicaid law if there's a key TAM plaintiff. And that's precisely what both of these cases were. Moreover, the defendant knew about the first of the terminations, I'm sorry, the first of the False Claims Act settlements two years ago, almost three years ago when it was entered, and determined at the time that there was no credible evidence of fraud to terminate Planned Parenthood. The third alleged grounds had to do with misrepresentations. And, Your Honor, the defendant has never once identified a single misrepresentation. Not before the district court, under questions, not in the briefs before this court. And the district court found that there were no, that under the record before the district court and the uncontradicted affidavits, that there were no misrepresentations. And again, defendant has never challenged the competence of Planned Parenthood to provide the Medicaid services to patients in this program. Under those circumstances, it's plain that the plaintiff patients here have a right to challenge Planned Parenthood's exclusion because they have excluded a qualified provider of Medicaid services. Does the record, and I know you said you have not developed any evidence yet, does it show what percentage of patients depend on Medicaid at Planned Parenthood? Yes, there is, if you would look to Ms. Linton's declaration, which is on 461 in the record, it details the impact that this termination would have. There are over 5,200 patients per year who receive their Medicaid services from Planned Parenthood. Planned Parenthood provides in Baton Rouge, they serve over 50% of the women who obtain Medicaid services of this kind in Baton Rouge. They serve 30% of the women who obtain these services here in New Orleans. And if this termination were to go forward, there is a question about whether Planned Parenthood would maintain its Baton Rouge clinic because it depends so heavily on the Medicaid reimbursements at that health center, it's something like 60% of their visits there. I still understand why Planned Parenthood didn't administratively challenge this. As I said, Your Honor, Planned Parenthood... They're willing to close. Your Honor, there was a termination, and Mr. Faircloth has acknowledged that there was an order terminating, this is his quote, terminating the Medicaid provider agreement. At that point, Planned Parenthood had options. They could invoke the administrative remedy that was provided, or they could pursue their 1983 claims in federal court. And the administrative option was to contest that before a state administrative body? It was, as I understand, before a state administrative body with a final decision to be made after a recommendation, the final decision to be made by the secretary. So it's obviously not a friendly forum. Well, Your Honor, and also to keep in mind the way this termination unfolded. The first thing that happened was they issued a termination notice that gave no reason. We can terminate you because we're terminating you. They provided an administrative remedy, but it wouldn't have suspended anything. Planned Parenthood filed with the patient plaintiffs, both together in federal court. After questioning by the district court, they chose to revoke that termination and replace it with another one, with the three grounds that I have talked about. In that, for the first time that we are aware of, the administrative remedy that they provided would have suspended the termination, not just through this administrative process, which as Your Honor recognizes was not a friendly forum, but also would have suspended the remedy through appeals in the Louisiana Supreme Court. Now, this is something we would pursue below in discovery. We believe that that's not anything that this defendant has offered to other providers. Their letter is at 498 in the record. Well, that would take years. And it would take years. And according to their logic, Planned Parenthood and the patients would lack standing to be here in federal court to bring this claim until the conclusion of those appeals. I thought he said that they would continue to pay during the interim. I thought I heard him say that. That's not true? If Planned Parenthood invoked the administrative remedy, their representation is that the payments would continue. That's correct. I want to respond to what Mr. Faircloth said about the O'Bannon case, which was a case in the United States Supreme Court that did address the AA23 provision that is here before the court. To be clear, that case was a procedural due process claim. There was no substantive claim in that case that the patients had been deprived of a qualified provider of choice. Instead, the patient plaintiffs in that case claimed that they were entitled to a hearing. And they used AA23 as a source of a federal protected interest or right that would give rise to a procedural due process right. And in that case, the Supreme Court said, you don't have a right to come in and demand a hearing when a provider has been deemed unqualified. I think this would address the floodgates concerns that Judge Owen was asking about. And in that case, the Supreme Court said, no, you don't have a procedural due process claim. But it didn't address at all the kind of claim we have here from the patient plaintiffs, which is that their substantive rights to the chosen provider of choice has been violated. And the line before Mr. Faircloth quoted states about AA23, and this is on page 785 of the By implication, this right also confers an absolute right to be free from government interference with the choice to remain in a home with a provider that continues to be qualified. And, Your Honors, we would submit that the patient plaintiffs here also have that right and defendant's action violates it. Do you have no further questions? Thank you, Mr. Blank. Thank you. Mr. Faircloth. Points that are clear, number one, in response to Judge Owen's questions, Planned Parenthood does not have a statutory claim to challenge the state of Louisiana's action. They don't. They don't. That's the reason. They haven't asserted one under 1983, have they? That's the vehicle. If they had a claim to assert, that would be the vehicle. They've asserted constitutional claims via 1983. They do not have a statutory claim. That's the reason they've hitched their wagon to their patients. And they can't hitch their wagon to their patients because they have a conflict of interest that is undeniable in this instance. They have thrown their patients overboard. The state of Louisiana has an administrative process that protects their patients from arbitrary termination of provider agreements. Protects them. The claim is that it worked just the other way, that if they didn't protect the patient, they were going to throw them into your lines now. I understand, Your Honor, but Congress says states, you have to have, you have to provide certain due process rights to providers, which we've done. We have an elaborate administrative process under Louisiana law that has been invoked here for the benefit of not just Planned Parenthood, but for their patients. They made a decision to continue their lawsuit. They wanted a lawsuit more than they wanted to protect these patients' funding. That's the truth. Three days... Isn't that a holla act, if there are no clinics that you can send them to that provide these services? Not at all, because they could have sent them to them. The termination was not effective. And it would not have been effective unless and until it completed the administrative process and the secretary at the end of that chose to proceed with the termination. A lot could have happened between there and here. They argue, as you know, that they're not required to proceed state administrative exhaustion. That's not required under Medicaid. That is exactly right. Okay. But they have no claim under Medicaid. They are required to proceed exhaustion if they're going to attempt to assert a third party standing claim on behalf of their patients. They are required. For the constitutional claims, I agree. They're not required. 1983 does not require exhaustion. I think in this instance you could make a case it probably should have because you don't know what they've been denied or whether it actually would occur. So there's a rightness argument on that. But for purposes of them attempting to assert the patient's cause of action or right of action, I think they most certainly had to exhaust if they wanted to. There's no real clear authority or deep discussion from any Fifth Circuit opinion about conflict of interest to assert third party standing. The Abbott 2 case, one of the abortion cases before this court, mentioned it in a footnote saying that doctors can assert a third party claim on behalf of their patients. I can't recall who wrote the opinion, but the court said we're aware that there could be a conflict, but it's not here because there wasn't. And what's your best case that their failure to pursue administrative remedies has resulted in a final administrative determination that they are unqualified? The best case is the fact that they have a provider agreement. And under their provider agreement, this is the process, the loan process that they have under the law to receive an adjudication under that agreement for a termination. And they themselves have abandoned that process by announcing to it. Have a case? Sir? She asked you for a case. Oh, a case. I don't have a case because this has never happened. There's nothing that I found in the jurisprudence where anyone administratively abandoned their rights while attempting to assert a third party claim. And so this is a very novel case, but my argument would be by their admission, they have no statutory claim. It's just a constitutional claim. And if they want to proceed with that, that's a different issue. But they have no statutory claim. They had one mechanism, the administrative procedure, and they chose consciously to abandon that. I want to point out, Your Honor, that in the amicus filed by the United States, they attached a CMS document, April 16, 2016, that says this, quote, the free choice provide provision does not infringe on state's traditional role of setting reasonable standards relating to qualifications. It absolutely does if the district court opinion below is correct. Because the state's authority, even by the government's admission, they can look to fraud allegations, they can over billing, crimes. There's a lot of things other than clinical competence that the state of Louisiana and the United States Secretary can look to determine whether you're qualified. So if the patient has a right to challenge a qualification decision for an individual provider, early in that process, as they proposed here, it is absolutely in conflict with the authority of the state. I see my time has ended, unless the court has any questions. Thank you. That concludes the court's arguments for today, and court will be